IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY SPODEN, #Y-15676,<br>*also known as* **NINA SPODEN**, | )<br>)<br>) |
| **Plaintiff**, | )<br>) |
| vs. | ) Case No. 18-cv-1402-NJR<br>) |
| **DAN LYNN,**<br>**B. VAUGHN,**<br>**AUSTIN LASTER,**<br>**and GIA D. WRIGHT,** | )<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Anthony Spoden[1] brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 while she was incarcerated at Shawnee Correctional Center ("Shawnee"). Plaintiff recently notified the Court that she would be released from IDOC custody on August 6, 2018. (Doc. 7). The IDOC inmate locator page reflects that Plaintiff was paroled on that date. Https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (Last visited Aug. 7, 2018).

Plaintiff's case was originally filed on April 13, 2018, as *Spoden v. Phelps, et al.*, Case No. 18-949-NJR. On July 17, 2018, the Court severed the claims in the instant action from Case No. 18-949-NJR, and severed three other sets of claims into separate actions. (Doc. 1).

The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A of the claims in Counts 8, 9, 10, and 11. In those claims, Plaintiff alleged that Defendants subjected her to retaliation in the form of false disciplinary tickets, and punished her

---

[1] Plaintiff's legal name is Anthony Spoden. However, Plaintiff is a transgender inmate who prefers to be called Nina Spoden. (Doc. 2, pp. 2, 13). Although the Court must use Plaintiff's legal name, feminine pronouns will be used in reference to Plaintiff.

1

with various sanctions as a result of those tickets. In the initial review order, the Court characterized the claims as follows:

> **Count 8 -** First Amendment retaliation claim against Defendant Lynn for issuing Plaintiff a disciplinary ticket for "intimidation or threats . . . [e]xpressing words" on or around November 7, 2017, after Plaintiff filed a grievance against Defendant Lynn for condoning the alleged misconduct of inmate peer educators on or around October 31, 2017.
>
> **Count 9 -** Fourteenth Amendment claim against Defendants Lynn, Laster, and Wright for depriving Plaintiff of a protected liberty interest without due process of law by punishing her with segregation, demotion to B-grade status, and a commissary restriction in connection with the disciplinary ticket issued on November 7, 2017.
>
> **Count 10 -** First Amendment retaliation claim against Defendant Vaughn for issuing Plaintiff a false disciplinary ticket for socializing with an inmate and giving an officer the middle finger on or around November 25, 2017, because Plaintiff filed grievances.
>
> **Count 11 -** Fourteenth Amendment claim against Defendants Vaughn and Laster for depriving Plaintiff of a protected liberty interest without due process of law by punishing her with a verbal reprimand for the false disciplinary ticket issued by Defendant Vaughn on November 25, 2017.

## The Complaint

Plaintiff is a transgender inmate, who is anatomically male but identifies as female. (Doc. 2, p. 35). She has been diagnosed with gender dysphoria, generalized anxiety disorder, and borderline personality disorder. (Doc. 2, pp. 35-36). These conditions cause her to suffer from severe anxiety, crying spells, and depression. (Doc. 2, p. 36). Treatment for gender dysphoria includes hormone therapy, sex reassignment surgery, and experience living as a member of the gender with which the person identifies. (Doc. 2, p. 37).

The Complaint includes general allegations that many Shawnee officials conspired to retaliate against Plaintiff for filing grievances to complain about the conditions of confinement

and about harassment at the hands of various prison officials. (Doc. 2, pp. 6-10, 14, 16-17, 26, 31-34).[2] Two specific instances give rise to the claims in this severed action.

On October 31, 2017, Plaintiff filed a grievance against Daniel Lynn, a correctional counselor who Plaintiff believed was "condoning the misconduct of the inmate's peer educators" who conduct the initial orientation for new Shawnee inmates. (Doc. 2, pp. 18, 44-45). Plaintiff complained that these peer educators dispensed false information about lesbian, gay, bisexual, and transgender ("LGBT") inmates, and used this negative information as a "scare tactic" with new inmates. *Id*. At orientation, the educators suggested that all LGBT inmates at Shawnee have HIV, and they disclosed the names of past inmates who tested positive, thus violating those inmates' privacy rights. *Id*. In the grievance, Plaintiff asked that this practice be stopped, and she volunteered to assist with the new inmate orientation. If the problems with orientation were not addressed, Plaintiff said her "next step" would be to contact Internal Affairs, "Springfield," and the Foundation for LGBT Equality. (Doc. 2, pp. 18-19, 45).

On November 7, 2017, Lynn issued Plaintiff a disciplinary ticket for "intimidation or threats . . . [e]xpressing by words," simply because she filed the grievance against the counselor. (Doc. 2, pp. 9, 19-20).[3] Plaintiff maintains that she was exercising her First Amendment rights in her grievance.

On or about November 20, 2017, the adjustment committee, which was comprised of Austin Laster and Gia Wright, conducted the hearing on Lynn's disciplinary ticket. (Doc. 2, pp. 19-20). Plaintiff explained that she was not threatening Lynn through the grievance, but was stating what she planned to do if the issue was not appropriately addressed by prison officials.

---

[2] The Court designated this conspiracy-to-retaliate claim as Count 1 in the initial merits review order and dismissed it without prejudice for failure to state a claim upon which relief may be granted. (Doc. 1, pp. 11, 13, 16).
[3] Plaintiff indicates that she attached Lynn's disciplinary ticket as Exhibit H (Doc. 2, p. 47), however, the page is illegible.

3

(Doc. 2, p. 20). Nonetheless, Laster and Wright found Plaintiff guilty of the rule violation. *Id*. They punished Plaintiff with 15 days of demotion to B-grade status, a commissary restriction, and limited her telephone calls to only twice per month. (Doc. 2, p. 20).

On or around November 25, 2017, Correctional Officer ("C/O") B. Vaughn issued Plaintiff a disciplinary ticket. (Doc. 2, pp. 31, 52). Plaintiff claims that Vaughn issued the ticket to retaliate for Plaintiff having filed a grievance and PREA complaint against another officer (Phelps).[4] (Doc. 2, p. 31).

Plaintiff explains that transgender inmates are allowed to shower during the 7:00 a.m. count. On November 25, 2017, Vaughn released Plaintiff from her cell to shower. *Id*. While Plaintiff waited outside the shower for the water to warm up, Vaughn ordered Plaintiff over the intercom to "get in or lock up." (Doc. 2, p. 31). Plaintiff explained that the water was cold, and she had a right to wait a couple minutes, but Vaughn ordered her to take the cold shower or lock up. *Id*. As Plaintiff began setting her items in the shower, the officer again used the intercom system to state, "[T]hat's it. Lock up or get a ticket." (Doc. 2, p. 31). Plaintiff locked up in her cell and asked to speak with a lieutenant. *Id*.

At 8:00 a.m., when Plaintiff went to the dayroom, Vaughn ordered Plaintiff to get her I.D. (Doc. 2, p. 31). Plaintiff questioned how Vaughn had any legitimate reason to write her a ticket. In response, Vaughn issued her a ticket, falsely claiming that Plaintiff was "socializing with [I]nmate Marcus Sanders" rather than showering, and that she gave Vaughn "the middle finger" as she returned to her cell. (Doc. 2, p. 32).[5] Plaintiff denies both claims, stating that

---

[4] Plaintiff filed a complaint against Phelps under the Prison Rape Elimination Act ("PREA") on September 19, 2017, and filed a grievance against Phelps on October 4, 2017, after she was disciplined based on a disciplinary ticket authored by Phelps. (Doc. 2, pp. 7-8). The warden later lifted Plaintiff's disciplinary sanctions after she met with him. (Doc. 2, p. 8).
[5] Plaintiff attaches the disciplinary ticket (Exhibit J, Doc. 2, p. 48), but the page is illegible.

Sanders had been asleep while Plaintiff attempted to shower, and she was nowhere near Sanders's cell. *Id*.

Plaintiff requested Sanders as a witness for her disciplinary hearing. Sanders was "abruptly" moved to another unit, however, after Vaughn overheard them discussing the matter. Plaintiff explained these events to the adjustment committee, which included Laster and Wright. (Doc. 2, pp. 32, 52). Laster "agreed plaintiff was being harassed by staff" and issued her a verbal reprimand. (Doc. 2, pp. 32, 52).

Plaintiff seeks compensatory and punitive damages. (Doc. 2, p. 40).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

For clarity, the Court shall continue to refer to Counts 8-11 as they were numbered in the original threshold review order. (Doc. 1, pp. 11-12). Upon closer review, however, the description of Count 9 is modified as set forth below to reflect that Plaintiff did not allege she was put in segregation as one of the punishments for Lynn's disciplinary ticket. Count 11 is modified to reflect that Wright was also a member of the panel that heard the ticket issued by Vaughn.

**Count 8 -** First Amendment retaliation claim against Defendant Lynn for issuing Plaintiff a disciplinary ticket for "intimidation or threats . . . [e]xpressing by words" on or around November 7, 2017, after Plaintiff filed a grievance against Defendant Lynn for condoning the alleged misconduct of inmate peer educators on or around October 31, 2017.

**Count 9 -** Fourteenth Amendment claim against Defendants Lynn, Laster, and Wright for depriving Plaintiff of a protected liberty interest without due process of law by punishing her with demotion to B-grade status, and commissary and telephone restrictions in connection with the disciplinary ticket issued on November 7, 2017.

**Count 10 -** First Amendment retaliation claim against Defendant Vaughn for issuing Plaintiff a false disciplinary ticket for socializing with an

> inmate and giving an officer the middle finger on or around November 25, 2017, because Plaintiff filed grievances.

**Count 11 -** Fourteenth Amendment claim against Defendants Vaughn, Laster and Wright, for depriving Plaintiff of a protected liberty interest without due process of law by punishing her with a verbal reprimand for the false disciplinary ticket issued by Defendant Vaughn on November 25, 2017.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Applying these standards, the Court finds that Counts 8 and 10 survive review and shall proceed for further consideration. Counts 9 and 11 shall be dismissed for failure to state a claim upon which relief may be granted.

Furthermore, because the claims in Counts 9 and 11 against Laster and Wright shall be dismissed, no common defendants or transactions/occurrences will remain to link the surviving claims in Counts 8 and 10. Accordingly, the Court shall sever Count 10 into a separate action, where that claim shall proceed.

### Count 8 – Retaliation – Lynn

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would deter a person of "ordinary firmness" from engaging in First Amendment activity in the future, and if the First Amendment activity was "at least a

motivating factor" in the defendants' decision to take the retaliatory action. *See McKinley v. Schoenbeck*, No. 17-1709, 2018 WL 1830942 at *3 (7th Cir. Apr. 17, 2018) (quoting *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011)); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Plaintiff's retaliation claim against Lynn presents a chronology of events that supports her claim. Plaintiff filed a grievance (a protected First Amendment activity) over what she viewed as improper actions of the inmate peer educators under Lynn's supervision. Lynn's November 7, 2017, disciplinary ticket accused Plaintiff of "intimidation or threats" based on the very words Plaintiff wrote in the grievance. The retaliation claim in **Count 8** against Lynn shall therefore proceed for further review.

**Dismissal of Count 9 – Due Process – Lynn, Laster, Wright**

Due process requires that an inmate facing a disciplinary hearing is given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the resulting discipline. *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). The imposition of discipline following a hearing must also be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994); *see also Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) (even a "meager" amount of evidence is sufficient to satisfy due process requirements).

In this case, Plaintiff does not point to any irregularity suggesting a *Wolff* violation in the hearing conducted by Laster and Wright over Lynn's disciplinary ticket. Even if there had been some procedural due process violation, however, Plaintiff cannot sustain a constitutional claim

for deprivation of a liberty interest without due process. A liberty interest will only be implicated if a prisoner's discipline includes a period of segregation that is of sufficient length and under conditions that amount to an "atypical and significant hardship" on the inmate, when compared to the conditions she would have faced in nondisciplinary segregation. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009); *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

Plaintiff's factual account reflects that she was not given any segregation time at all as a result of the "threats and intimidation" ticket issued by Lynn and adjudicated by Laster and Wright. She alleged that she was punished only with 15 days of demotion to B-grade status, along with restrictions on commissary and telephone calls. Those forms of punishment do not amount to a deprivation of liberty of constitutional significance. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

Because the punishments imposed on Plaintiff did not amount to a constitutional deprivation, **Count 9** against Lynn, Laster, and Wright shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Count 10 – Retaliation – Vaughn

Plaintiff's claim against Vaughn for giving her a false disciplinary ticket is evaluated in light of the same standards explained under Count 8 above. Plaintiff asserts that the First Amendment activity which prompted Vaughn to issue the false ticket was Plaintiff's earlier grievance and complaint filed against Phelps, in late September and early October 2017. (Doc. 2, pp. 7-8, 31). The connection between Plaintiff's protected activity directed at Phelps, and Vaughn's retaliatory action more than a month and a half later (on November 25, 2017), seems

8

tenuous. However, the retaliation claim may cross "the line between possibility and plausibility." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). At this early stage, therefore, the Court shall allow Plaintiff to proceed with the retaliation claim in **Count 10** against Vaughn. As noted above, however, this claim shall be severed into a separate case.

### Dismissal of Count 11 – Due Process – Vaughn, Laster, Wright

The analysis of this due process claim tracks the discussion under Count 9 above. Again, Plaintiff does not point to any procedural due process irregularity in the disciplinary hearing conducted by Laster and Wright, with the possible exception of her inability to call inmate Sanders as a witness. Nonetheless, the only punishment Plaintiff received on Vaughn's allegedly false ticket was a verbal reprimand. (Doc. 2, pp. 32, 52). That outcome does not remotely implicate any constitutionally protected liberty interest. *See Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein).

Because Plaintiff did not suffer any loss of liberty as a result of Vaughn's disciplinary ticket, the due process claim in **Count 11** against Vaughn, Laster, and Wright shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Severance of Count 10

As the Court explained in the order severing this action (Doc. 1, pp. 13-14), multiple defendants may only be joined in a single lawsuit if the plaintiff asserts a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of **the same transaction, occurrence, or series of transactions or occurrences**" and if "any question of law or fact common to all defendants will arise in the action." *See* FED. R. CIV. P. 20(a)(2) (emphasis added). The Seventh Circuit instructs courts to sever unrelated claims against different defendants into separate cases. *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *George v.*

9

*Smith*, 507 F.3d 605 (7th Cir. 2007). *See also Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them).

In light of the dismissal of Counts 9 and 11, the only two defendants remaining in this case are Lynn and Vaughn. While Plaintiff asserts a retaliation claim against each defendant, Lynn issued the retaliatory ticket against Plaintiff on November 7, 2017, in a transaction/occurrence that was distinct from the November 25, 2017, incident where Vaughn gave Plaintiff a false ticket. Because Count 8 arose from a different incident from the events that led to Count 10, the retaliation claim against Lynn in Count 8 cannot proceed in the same lawsuit as the retaliation claim against Vaughn in Count 10. *See* FED R. CIV. P. 20(a)(2); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (to be joined in the same action, claims must arise from the same transaction or occurrence *and* present a common question of law or fact).

Consistent with the *George* decision and Federal Rules of Civil Procedure 20 and 21, the Court shall sever Count 10 against Vaughn, and shall open a new case with a newly-assigned case number for that claim. Plaintiff shall be assessed an additional filing fee for the new severed case. Because the Court has found that Count 10 survives review under Section 1915A, an order directing service on Vaughn and referring the claim to a magistrate judge may be entered in the severed case as soon as it is opened and assigned to a judge.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 4) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

**Disposition**

**COUNTS 9 and 11** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **LASTER** and **WRIGHT** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 20(a)(2), Plaintiff's retaliation claim against Vaughn in **COUNT 10**, which is unrelated to the retaliation claim against Lynn in Count 8, is **SEVERED** into a new case. That new case shall be: Claim against **B. VAUGHN** for retaliation.

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The Memorandum and Order at Doc. 1
(3) The Complaint (Doc. 2)
(4) Plaintiff's motion to proceed *in forma pauperis* (Doc. 3)
(5) Plaintiff's motion for recruitment of counsel (Doc. 4)
(6) Plaintiff's notice of change of address (Doc. 7)

Plaintiff **will be responsible for an additional $350.00 filing fee** in the new case. Because Plaintiff was already granted leave to proceed *in forma pauperis* ("IFP") in this action, she shall also be granted leave to proceed IFP in the newly-severed case.

Because this Memorandum and Order contains the Section 1915A merits review of the severed Count 10, an order may be entered to refer Count 10 to the magistrate judge and order service on Defendant Vaughn in the severed case, as soon as the new case is opened and the judge assignment is made.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 8 against Defendant LYNN*, for retaliation against Plaintiff. This case shall now be captioned as: **ANTHONY SPODEN, Plaintiff, vs. DAN LYNN, Defendant.**

**IT IS FURTHER ORDERED** that Defendant **B. VAUGHN** is **TERMINATED** from

*this* action with prejudice.

In order for **COUNT 8** to proceed, the Clerk of Court shall prepare for **LYNN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, a copy of the July 17, 2018, Memorandum and Order at Doc. 1, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, his last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 4).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that her application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than **7 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  August 10, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**